IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BONNIE JACKSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-CV-151-JHP |
| | ) | |
| AMERICAN FAMILY LIFE ASSURANCE | ) | |
| COMPANY OF COLUMBUS, | ) | |
| d/b/a AFLAC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court are Plaintiff Bonnie Jackson's Opening and Supplemental ERISA Briefs [Docket Nos. 41, 49], and Defendant American family Life Assurance Company of Columbus' ("AFLAC") Opening, Response, and Supplemental ERISA Briefs [Docket Nos. 42, 45, 48].

## BACKGROUND

Bonnie Jackson, Plaintiff, is an employee at the Tulsa Orthopedic Hospital of Oklahoma. Jackson was offered disability coverage through a "cafeteria plan" sponsored by her employer. The cafeteria plan is known as the 1st Odyssey Group, Inc. Flexible Benefits Plan (the "Plan") and is an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). On December 31, 2003, Plaintiff signed an application for Specific Health Event and Short-term Disability Insurance with AFLAC and checked "no" in response to Question No. 13:

> Have you ever been diagnosed with or received treatment by a member of the medical profession for Type I diabetes; or for Type II diabetes (1) diagnosed prior to age 30, or (2) with complications to include retinopathy, neuropathy, or nephropathy, or (3) with continued tobacco use, or (4) requiring the use of insulin

1

within the past five years?

[Docket No. 33-4, AF0119]. On August 5, 2008, Plaintiff was hospitalized for a coronary condition. She submitted her claim for short-term disability ("STD") benefits on August 23, 2008. After reviewing Jackson's medical records AFLAC determined that Jackson had been diagnosed with Type II diabetes which required the use of insulin within the past five years. Based on her negative response to Question No. 13 on her application, ALAC decided that Jackson had not answered the question truthfully. AFLAC considered Jackson's answer a material misrepresentation. As a result, AFLAC declined Jackson's claim for STD benefits, rescinded her policy, and refunded her premiums.

Subsequent to AFLAC's denial of her claim, Jackson initiated this lawsuit. Jackson alleges that, pursuant to the Plan terms, AFLAC improperly denied her claim for benefits in violation of ERISA. Jackson seeks a declaration that she is entitled to STD benefits and attorney fees. In support of her allegations, Jackson argues that she was never "required" to take insulin to treat her diabetes. Rather, she voluntarily chose to take insulin because it caused fewer side effects than her oral medication, Metformin. AFLAC argues that nothing in Jackson's medical records indicate that her use of insulin was optional. Furthermore, AFLAC argues that if Jackson had disclosed that she used insulin to treat her diabetes, even if she was not dependent on insulin, it would not have issued disability coverage to her.

## **DISCUSSION**

I. <u>The Administrative Record</u>

The record in the instant case has been submitted to the Court and is Bate stamped AF0015 through AF516. [Docket Nos. 33, 34]. The record contains several documents which

indicated that Jackson was diagnosed with Type II diabetes and used insulin to treat her condition. In fact, several of the documents indicated that Jackson was insulin-dependent. On August 30, 2005, AFLAC received a Hospital Admission History and Physical dated August 5, 2005, which indicated that Jackson had Type II diabetes diagnosed in 1998 and listed Lantus (a type of insulin) as one of her medications. [Docket No. 33-7, AF0231-0233]. On the same day, AFLAC received a History and Physical from Saint Francis Heart Hospital dated August 5, 2005, which stated that Jackson had a history of insulin-dependent diabetes. The History and Physical also stated that Jackson had multiple risk factors for coronary disease, including insulin dependent diabetes, not well controlled. [Docket No. 33-7, AF0227-0228]. Also on August 30, 2005 AFLAC, received a Consultation report from Saint Francis Heart Hospital dated August 8, 2005, which indicated that Jackson had been using insulin as a medication prior to admission. [Docket No. 33-7, AF0217-0218]. On the same day, AFLAC received a Discharge Summary dated August 15, 2005, from Saint Francis Heart Hospital dictated by Dr. James Whiteneck, M.D., which indicated that Jackson's diagnosis of insulin-dependent diabetes mellitus, and that she was being discharged to continue her Lantus insulin, 40 milligrams. [Docket No. 33-7, AF0234-0235].

On October 19, 2005, AFLAC received Progress Notes from Dr. Brannon Spillars, Jackson's primary care physician, dated May 22, 2003, which indicated that Jackson had diabetes mellitus (DM) II uncontrolled. [Docket No. 33-5, AF0188]. AFLAC received two other progress notes from Dr. Spillars which stated that Jackson had DM II uncontrolled. [Docket No. 34-3, AF0418, 0419]. Also on October 19, 2005, AFLAC received a Progress Note fron Dr. Spillars dated May 3, 2004, which indicated that Jackson wanted to "change insulin" and wanted

to "change diabetic meds." [Docket No. 34-3, AF0420]. On the same day, AFLAC received a different Progress Note which indicated that Jackson was "using metformin + insulin able to control blood sugar; still never < 140." [Docket No. 34-3, AF0421]. Additionally, on November 9, 2005, Dr. Spillars send AFLAC a letter which states, in its entirety:

> To Whom It May Concern:
> Bonnie Jackson is a patient of mine. She has never been insulin dependent. Insulin was only used as adjunct when Metformin was unavailable to her. If you have any questions, please do not hesitate to call me at [ ].

[Docket No. 33-5, AF0182].

II.  Standard of Review and Conflict of Interest

Originally, neither party addressed the applicable standard of review in their briefs. Because the Court believes the issue to be crucial to any ERISA case, the Court ordered the parties to file supplemental briefs addressing the appropriate standard of review and whether there is an inherent conflict of interest in this case. [Docket No. 46]. Jackson argues that a *de novo* standard applies, but cites to nothing to support this position. AFLAC argues that an arbitrary and capricious standard of review is applicable because AFLAC, as a claims fiduciary, is vested with the sole discretion to construe and interpret individual policies pursuant to the Plan. The Court agrees with AFLAC. When a plan gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, a challenge to the administrator's decision is to be reviewed under an arbitrary and capricious standard. *Firestone Tire and Life Insurance Company v. Bruch,* 489 U.S. 101, 155 (1989). In regard to claims for benefits under individual policies, such as Jackson's, the Plan states:

> 8.01 Application to Plan Benefits. The provisions of this Article do not apply to:
> i) claims for benefits under individual policies or ii) claims for benefits under
> group policies not subject to ERISA. In the event a claim arises with respect to

>    benefits under such policies, the insurer shall be the appropriate named fiduciary
>    for purposes of benefit determinations, and with regard to benefits under such
>    policies, shall have the discretionary authority to construe and interpret the
>    polices and make factual determinations thereunder.

[Docket No. 34-5, AF507].   Because the Plan confers discretionary authority upon AFLAC to determine eligibility for benefits, ERISA's arbitrary and capricious standard of review applies. The Court's review is "limited to the administrative record-the materials compiled by the administrator in the course of making his decision." *Fought v. UNUM Life Ins. Co. Of Am.*, 379 F.3d 997, 1003 (10th Cir. 2004).

"Under a 'pure' version of the arbitrary and capricious standard, a plan administrator's or fiduciary's decision will be upheld 'so long as it is predicated on a reasoned basis.' " *Graham v. Hartford Life & Acc. Ins. Co.*, 2009 WL 702813, *5 (N.D. Okla. March 13, 2009) (quoting *Adamson v. UNUM Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006)).  When reviewing a benefits determination under this standard, the administrator's decision must only "reside[ ] somewhere on the continuum of reasonableness-even if on the low end."  *Id*.  (Internal citations omitted).  However, if an ERISA fiduciary both decides eligibility and pays benefits claims out of its own pocket, an inherent conflict of interest arises.  *See Fought*, 379 F.3d at 1005.  This is because the fiduciary is in a position to "favor, consciously or unconsciously, its interests over the interests of the plan beneficiaries." *Id*. at 1003.  Here, AFLAC was operating under an inherent conflict, therefore, the Court must weigh the conflict of interest "as a 'factor in determining whether there is an abuse of discretion.'" *Id.*  (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)).

The recent decision by United States Supreme Court in  *Metropolitan Life Insurance Company v. Glenn, ___U.S. ____,* 128 S. Ct. 2343, 2350 (2008), modified the approach of

5

reviewing a denial of benefits by a conflicted administrator.  Prior Tenth Circuit cases held that when a decision was rendered by a conflicted plan administrator, the burden shifted to the administrator "to establish by substantial evidence that the denial of benefits was not arbitrary and capricious." *Fought*, 379 F.3d at 1005.  *Glenn*, however, "expressly rejects and therefore abrogates this approach." *Holcomb v. UNUM Life Ins. Co. of Am.*, ___ F.3d ___, 2009 WL 2436673 (10th Cir. 2009).  In rejecting a burden shifting approach, the *Glenn* Court stated:

> Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict. In principle, as we have said, conflicts are but one factor among many that a reviewing judge must take into account. Benefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts-which themselves vary in kind and in degree of seriousness-for us to come up with a one-size-fits-all procedural system that is likely to promote fair and accurate review. Indeed, special procedural rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress.

 128 S. Ct. at 2351

*Glenn* embraces instead a "combination-of-factors method of review" that allows judges to "take account of several different, often case-specific, factors, reaching a result by weighing all together." *Id.*  In addressing how much weight to give to the conflict of interest factor, the Court stated:

> [A] conflict of interest . . .  should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Id.* at 2351.

III. AFLAC's Denial of Jackson's Claim

Pursuant to the Supreme Court's decision in *Glenn*, the Court will consider AFLAC's inherent conflict as a factor, but will not shift the burden to AFLAC to prove the reasonableness of its decision. Jackson has presented no evidence that AFLAC's inherent conflict resulted in a biased decision. Even when directed to file a supplemental brief addressing the standard of review and conflict of interest issues, Jackson did not point to any specific facts which indicate that AFLAC's conflict affected its benefits decision. Similarly, AFLAC did not point to any specific steps it took to reduce potential bias or promote accuracy. Because there is no indication in the record that AFLAC's conflict affected its decision, the Court does not place a substantial amount of weight on the conflict of interest factor.

Jackson contends that she truthfully answered Question No. 13 which asked if she had ever been diagnosed with Type II diabetes which required the use of insulin. Jackson argues that although she has Type II diabetes and regularly uses insulin to control her diabetes, her use of insulin is *voluntary*, not *required*. She states that she uses insulin as an alternative to her oral medications because the oral medications causes "unbearable" side effects. Jackson argues that AFLAC is attempting to retroactively change the question to ask if she had ever *used* insulin. Further, Jackson states that Question No. 13 was ambiguous and should be construed against AFLAC, the drafter, in accordance with Tenth Circuit case law. The Court agrees with Jackson that AFLAC should not be permitted to retroactively change the wording of the question, however, the Court finds that AFLAC's decision was not arbitrary and capricious.

As previously stated, the Court's review of the administrator's decision is limited to the

administrative record. Based on the documents contained in the administrative record, AFLAC's conclusion that Jackson answered Question No. 13 untruthfully was reasonable. The record contains many documents, discussed in subsection I of this Order, such as patient medical histories, physicals, consultation reports, discharge summaries, and progress notes, which support a finding that Jackson was required to use insulin to treat her diabetes. Several of these documents refer to Jackson as "insulin-dependent." Based on the common and ordinary meaning of the words, a person certainly is "required" to take insulin if she is "insulin-dependent." Other documents in the record indicate that Jackson regularly uses insulin to control her diabetes. These documents do not expressly use the term "insulin-dependent," but are consistent with a finding that Jackson was required to use insulin. Out of hundreds of documents in the administrative record, the only document which indicates that Jackson's use of insulin was voluntary is the four sentence letter from Dr. Spillars which summarily stated that Jackson was not insulin-dependent.

The overwhelming majority of the evidence indicated that Jackson was required to use insulin, even under Jackson's strict interpretation of the word "required." Dr. Spillars' letter, without more, was far from convincing evidence that Jackson was not "required" to take insulin. Even considering the fact that AFLAC's conflict of interest could have motivated it to give less weight to Dr. Spillars' letter, the Court cannot find that AFLAC's decision was arbitrary and capricious. Rather, the Court finds that, considering all the evidence relied on by AFLAC, its determination that Jackson made a material misrepresentation on her application was reasonable and supported by substantial evidence. As a result, AFLAC's denial of Jackson's short-term disability claim must be affirmed.

## CONCLUSION

For the reasons set forth herein, AFLAC's denial of Jackson's short-term disability claim is hereby AFFIRMED. A separate judgment is filed herewith.

IT IS SO ORDERED.

*[signature]*

James H. Payne
United States District Judge
Northern District of Oklahoma